480 A.2d 1046

COMMONWEALTH of Pennsylvania, Appellant,

v.

Despina SMALIS, a/k/a Pepe Smalis. (Four cases.)

COMMONWEALTH of Pennsylvania, Appellant,

v.

Ernest SMALIS, a/k/a Anatstasios Smalis. (Four cases.)

Superior Court of Pennsylvania.

Argued Oct. 17, 1983.

Filed June 29, 1984.

Petition for Allowance of Appeal Granted
Aug. 24, 1984.

310

Melinda G. Tell, Assistant District Attorney, Pittsburgh, for Commonwealth, appellant.

Norma Chase, Pittsburgh, for Despina Smalis, appellee.

Thomas A. Livingston, Pittsburgh, for Ernest Smalis, appellee.

Before SPAETH, President Judge, and WICKERSHAM, BROSKY, ROWLEY, WIEAND, JOHNSON and HOFFMAN, JJ.

WIEAND, Judge:

The trial court in this criminal action sustained defense demurrers to charges of murder, voluntary manslaughter and causing a catastrophe. The Commonwealth appealed. We do not reach the substantive merits of the appeal. Principles of double jeopardy, as interpreted and applied by recent decisions of the Supreme Court of the United States,

bar the Commonwealth's right of appeal and compel us to quash the appeal.

■ Despina Smalis and Ernest Smalis were the owners of a building in the Oakland section of Pittsburgh which housed a bar and restaurant known as "Chances R" and seven dwelling units. On February 12, 1979, a fire destroyed the building, killing two tenants who were in the dwelling units. The owners were accused of setting the fires or causing them to be set and were charged with criminal homicide, recklessly endangering another person, causing a catastrophe and failing to prevent a catastrophe. Despina Smalis was also charged with theft by deception. The evidence was heard by the court without a jury. At the close of the Commonwealth's case, the trial court sustained a demurrer to the evidence with respect to the charges of murder, voluntary manslaughter and causing a catastrophe.[1] The court did so because, as the trial court observed in a subsequent opinion, "[a]s the trier of fact and law, the court was not satisfied, after considering all of the facts together with all reasonable inferences which the Commonwealth's evidence tended to prove, that there was sufficient evidence from which it could be concluded that either of the defendants was guilty beyond a reasonable doubt of setting or causing to be set the fire in question." The Commonwealth appealed.[2]

1. Trial on the remaining charges of involuntary manslaughter, recklessly endangering, failing to prevent a catastrophe, and theft by deception, was continued and held in abeyance to permit the Commonwealth to appeal the order sustaining demurrers to the charges of murder, voluntary manslaughter and causing a catastrophe. This procedure is not recommended. After a criminal trial has been commenced, it should not be delayed by piecemeal appeals from orders which do not terminate the proceedings finally. Because we conclude that the Commonwealth in any event has no right of appeal from a mid-trial determination that the evidence is insufficient to sustain a conviction, we do not decide whether the court's order in this case was interlocutory or sufficiently final to permit appeal.

2. The trial court granted a Commonwealth petition for reconsideration, but after reconsidering, the court confirmed its prior order sustaining the demurrers. The Commonwealth filed a second appeal from this order.

Until recent times, a demurrer to the evidence was merely a procedural device, authorized by the Act of June 5, 1937, P.L. 1703, § 1, 19 P.S. § 481 (repealed), by which a criminal defendant might test the sufficiency of the Commonwealth's evidence at the close of the Commonwealth's case. See: *Commonwealth v. Heller et al.,* 147 Pa.Super. 68, 83, 24 A.2d 460, 467 (1942). See also: 10A P.L.E. Criminal Law § 617. Under this practice, it was said, an order sustaining a demurrer to the evidence determined no facts and was purely a question of law. Such an order, the decisions uniformly held, was appealable by the Commonwealth. *Commonwealth v. Long,* 467 Pa. 98, 100 n. 2, 354 A.2d 569, 570 n. 2 (1976); *Commonwealth v. Melton,* 402 Pa. 628, 629, 168 A.2d 328, 329 (1961); *Commonwealth v. Lewis,* 299 Pa.Super. 367, 369, 445 A.2d 798, 799 (1982); *Commonwealth v. Matsinger,* 288 Pa.Super. 271, 273, 431 A.2d 1043, 1044 (1981); *Commonwealth v. Barone,* 276 Pa.Super. 282, 289 n. 9, 419 A.2d 457, 461 n. 9 (1980); *Commonwealth v. Ferrone,* 218 Pa.Super. 330, 333, 280 A.2d 415, 417 (1971).

The practice of demurring to the evidence is now governed by Pa.R.Crim.P. 1124(a). This rule equates a demurrer to the evidence with other motions intended to challenge the legal sufficiency of the evidence to support a conviction. The Rule provides:

(a) A defendant may challenge the sufficiency of the evidence to sustain a conviction of one or more of the offenses charged by a:

(1) demurrer to the evidence presented by the Commonwealth at the close of the Commonwealth's case-in-chief;

(2) motion for judgment of acquittal at the close of all the evidence;

(3) motion for judgment of acquittal filed within ten (10) days after the jury has been discharged without agreeing upon a verdict; or

(4) motion in arrest of judgment filed within ten (10) days after a finding of guilt.

When a court finds the Commonwealth's evidence legally insufficient under this Rule, the evidence has been found to be so lacking in sufficiency that no rational fact finder could base a conviction thereon. When such a determination has been made, the Supreme Court of the United States has held, principles of double jeopardy bar a second trial.

When a trial judge directs a verdict of acquittal, as under Rule 1124(a)(2), that verdict is final. Because a second trial is barred by principles of double jeopardy, the Commonwealth has no right of appeal from an order directing a verdict of acquittal. *Fong Foo v. United States*, 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962). See also: *Finch v. United States*, 433 U.S. 676, 97 S.Ct. 2909, 53 L.Ed.2d 1048 (1977)(dismissal of charges prior to entry of verdict on grounds that stipulated facts did not state an offense held unappealable); *In The Interest of R.K.K.*, 112 Ill.App.3d 982, 68 Ill.Dec. 573, 446 N.E.2d 307 (1983)("directed verdict" entered at close of state's case-in-chief based upon state's failure to prove age of victim in statutory rape case held not appealable); *State v. Murrell*, 54 N.C.App. 342, 283 S.E.2d 173 (1981)(dismissal of charges on insufficiency grounds at close of trial held not appealable). Cf. *People v. Casiel*, 41 N.Y.2d 945, 394 N.Y.S.2d 630, 363 N.E.2d 354 (1977), *reversing* 42 A.D.2d 762, 346 N.Y.S.2d 349 (1973); *State v. Winborne*, 273 S.C. 62, 254 S.E.2d 297 (1979).

When a trial court grants a motion for judgment of acquittal after the jury has been discharged without agreeing upon a verdict, as under Rule 1124(a)(3), the defendant cannot be retried. Such a ruling represents a final determination that the prosecution failed to prove facts sufficient to convict. It is the same determination which is made by a court when it directs a verdict of acquittal at the close of the evidence. Because the federal Double Jeopardy Clause bars a retrial, the Commonwealth has no right of appeal from an order directing a verdict under such circumstances. *United States v. Martin Linen Supply Co.*, 430 U.S. 564,

97 S.Ct. 1349, 51 L.Ed.2d 642 (1977). See also: *United States v. Suarez,* 505 F.2d 166 (2d Cir.1974).

■ Principles of double jeopardy are applicable also when a trial court has granted a post-trial motion in arrest of judgment in a manner similar to that provided for in Rule 1124(a)(4) or where an appellate court has reversed a conviction on grounds that the evidence was so inadequate that no rational fact finder could have voted to convict thereon. *Hudson v. Louisiana,* 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981)(determination by trial court pursuant to post-trial motion that evidence was insufficient to support conviction bars retrial); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978)(determination by appellate court that evidence was insufficient to support conviction bars retrial); *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)(determination by appellate court that government failed to introduce sufficient evidence to rebut defendant's proof of insanity, holding in essence that trial court should have directed a verdict in defendant's favor, bars retrial). However, where a trial court has found post-verdict that the evidence was insufficient as a matter of law to support the verdict, that determination is subject to appellate review, for an order by an appellate court reversing such a conclusion and reinstating the verdict does not require a second trial. Therefore, there is no violation of principles of double jeopardy. *Commonwealth v. Rawles,* 501 Pa. 514, 519–520, 462 A.2d 619, 621 (1983). See also: *United States v. Singleton,* 702 F.2d 1159 (D.C.Cir. 1983) (collecting cases at 1161–1162 n. 8); *Commonwealth v. Macolini,* 503 Pa. 201, 469 A.2d 132 (1983) (Superior Court's reversal of judgment of sentence on grounds of insufficiency of evidence reversed by Supreme Court).

■ The legal principle to be drawn from these decisions was articulated in *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978) as follows: "A judgment of acquittal, whether based on a jury verdict of not guilty or on a ruling by the court that the evidence is insufficient to convict, may not be appealed and terminates the prosecution

when a second trial would be necessitated by a reversal." *Id.* at 91, 98 S.Ct. at 2194, 57 L.Ed.2d at 74 (footnote omitted).[3]

■ A demurrer to the evidence requires a court to accept as true the evidence presented by the Commonwealth and view that evidence, together with all reasonable inferences to be drawn therefrom, in the light most favorable to the Commonwealth. See: *Commonwealth v. Turner*, 491 Pa. 620, 622, 421 A.2d 1057, 1058 (1980); *Commonwealth v. Wimberly*, 488 Pa. 169, 171, 411 A.2d 1193, 1194 (1979); *Commonwealth v. Duncan*, 473 Pa. 62, 66 n. 2, 373 A.2d 1051, 1052 n. 2 (1977); *Commonwealth v. Long, supra* 467 Pa. at 100, 354 A.2d at 570; *Commonwealth v. Bastone*, 321 Pa.Super. 232, 236–237, 467 A.2d 1339, 1341 (1983); *Commonwealth v. Cugnini*, 307 Pa.Super. 113, 115, 452 A.2d 1064, 1065 (1982); *Commonwealth v. Gilliard*, 300 Pa.Super. 469, 478, 446 A.2d 951, 955 (1982). The court must then determine whether the Commonwealth's evidence, when so considered, is sufficient to permit a rational person to base thereon a finding of guilt beyond a reasonable doubt.

The Supreme Court of the United States has not distinguished and set aside for separate treatment those determinations of evidentiary insufficiency which are made mid-trial. See and compare: *Sanabria v. United States*, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978)(pre-verdict acquittal for insufficient evidence, even though caused by erroneous evidentiary ruling, held not appealable); *Finch v. United States, supra* (dismissal of charges prior to entry of verdict on grounds that stipulated facts did not state an offense held unappealable); *Fong Foo v. United States, supra* (order directing verdict of acquittal entered during govern-

---

**3.** This rule has no application to cases where a trial judge has terminated a criminal proceeding favorably to the defendant on a basis not related to factual guilt or innocence (*United States v. Scott, supra*) or where a retrial has been granted at the instance of the defendant because a court found a verdict of guilty contrary to the weight of the evidence (*Tibbs v. Florida,* 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982)).

ment's case-in-chief held not appealable). The Supreme Court has said, rather, that in determining whether action taken by the trial court has constituted an "acquittal" for double jeopardy purposes, the form of the judge's action is not controlling. "[W]e must determine whether the ruling of the judge, whatever its label, actually represents *a resolution, correct or not, of some or all of the factual elements of the offense charged.*" United States v. Martin Linen Supply Co., supra, *430 U.S. at 571, 97 S.Ct. at 1354–1355, 51 L.Ed.2d at 651 (emphasis added). See:* United States v. Scott, supra, *437 U.S. at 97, 98 S.Ct. at 2197, 57 L.Ed.2d at 78;* Burks v. United States, supra, *437 U.S. at 10, 98 S.Ct. at 2147, 57 L.Ed.2d at 9;* United States v. Genser, *710 F.2d 1426, 1427–1428 (10th Cir.1983);* United States v. Allison, *555 F.2d 1385, 1387 (7th Cir.1977);* Commonwealth v. Ward, *493 Pa. 115, 425 A.2d 401 (plurality opinion),* cert. denied, *451 U.S. 974, 101 S.Ct. 2055, 68 L.Ed.2d 354 (1981);* Commonwealth v. Tabb, *491 Pa. 372, 421 A.2d 183 (1980),* cert. denied, *450 U.S. 1000, 101 S.Ct. 1708, 68 L.Ed.2d 202 (1981);* Commonwealth v. Wimberly, supra; Commonwealth v. Dincel, *311 Pa.Super. 470, 457 A.2d 1278 (1983).*

In view of recent Supreme Court decisions, a growing number of jurisdictions has held that a judicial determination of insufficient evidence, when made mid-trial, is not subject to appeal. See: *Miller v. State,* 648 P.2d 1015 (Alaska 1982)(charges dismissed after state's case-in-chief on insufficiency grounds due to inability of witness to testify held not subject to reinstatement); *State v. Smith,* 164 Ga.App. 598, 298 N.E.2d 583 (1982)(no right of appeal from "directed verdict" entered at close of case-in-chief); *In The Interest of R.K.K., supra* (same); *State v. Whorton,* 225 Kan. 251, 589 P.2d 610 (1979)(dismissal of charges during state's case-in-chief on sufficiency grounds held unappealable); *State v. Shaw,* 282 Md. 231, 383 A.2d 1104 (1978)(dismissal of charges upon submitted facts not appealable where trial court held that alleged criminal conduct did not constitute crime); *People v. Anderson,* 409 Mich. 474,

295 N.W.2d 482 (1980), *cert. denied,* 449 U.S. 1101, 101 S.Ct. 896, 66 L.Ed.2d 827 (1981)(determination that evidence was insufficient to sustain charge of first degree murder after presentation of some, but not all, of state's case-in-chief held unappealable); *State v. Greenwalt,* Mont., 663 P.2d 1178 (1983) (no appeal from dismissal of charges on insufficiency grounds after state's case-in-chief); *People v. Brown,* 40 N.Y.2d 381, 386 N.Y.S.2d 848, 353 N.E.2d 811 (1976), *cert. denied,* 433 U.S. 913, 97 S.Ct. 2986, 53 L.Ed.2d 1099 (1977), *followed as stated in People v. Key,* 45 N.Y.2d 111, 408 N.Y.S.2d 16, 379 N.E.2d 1147 (1978)(same); *State v. Musselman,* 667 P.2d 1061 (Utah 1983)(same); *In the Matter of Dowling,* 98 Wash.2d 542, 656 P.2d 497 (1983)(same).

An order sustaining a demurrer to the evidence under current Pennsylvania practice is a mid-trial determination that the prosecution's evidence is legally insufficient to support a conviction. Pa.R.Crim.P. 1124(a)(1). For double jeopardy purposes it has precisely the same effect as a directed verdict of acquittal. A court has made a determination that upon the evidence presented no rational fact finder could vote to convict the defendant. This is a termination of the trial on a basis related to a factual determination of guilt or innocence. "Under the dispositive [decisions of the Supreme Court] such a ruling of insufficiency, no matter how labeled, represents a conclusion that there has been a failure of proof: that is, there has been an acquittal which is to be accorded the special significance of finality and unreviewability." Strazzella, *Commonwealth Appeals and Double Jeopardy,* 4 Pa.L.J. 11, 12 (1981).

In a case in which a trial court based an order granting a demurrer upon a comparison of the relative credibility of witnesses, this Court held that the Commonwealth had no right of appeal. *Commonwealth v. Stumpo,* 306 Pa.Super. 447, 452 A.2d 809 (1982). Accord: *Commonwealth v. Wimberly, supra.* We have also held that the Commonwealth has no right of appeal where the trial court has sustained a demurrer to the evidence and, in addition, has entered a

finding of not guilty. *Commonwealth v. Thinnes,* 263 Pa.Super. 79, 397 A.2d 5 (1979). Accord: *Commonwealth v. Haines,* 410 Pa. 601, 190 A.2d 118 (1963). For double jeopardy purposes, there is no practical distinction to be drawn between the determinations made in these cases and a determination that the evidence, when considered in the light most favorable to the Commonwealth, is so lacking in sufficiency that no rational fact finder can rest a conviction thereon. In either situation, there has been a termination of the trial on a basis related to a factual determination of guilt or innocence. In either situation, a second trial is necessary in the event of reversal.

How, then, can an order sustaining a demurrer to the evidence under Pennsylvania practice be distinguished from other insufficiency determinations which are not appealable? If it cannot be so distinguished, how can we refuse to follow the decisions of the Supreme Court of the United States which define and apply the Double Jeopardy Clause of the United States Constitution? The answer is that we cannot. Prior Pennsylvania decisions holding that orders sustaining demurrers are appealable by the Commonwealth can no longer be followed. They are at variance with decisions of the Supreme Court of the United States. We hold, therefore, that a mid-trial order holding the evidence insufficient to support a conviction is not appealable by the Commonwealth.[4]

Where the trial court's determination constitutes an "acquittal" within the definition of *Martin Linen,* an appeal is barred not only when it might result in a second trial, but also if reversal would translate into " 'further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged...' " *United States v. Martin Linen Supply Co., supra,* 430 U.S. at 570, 97 S.Ct. at 1354, 51 L.Ed.2d at 650, *quoting with approval* from *United States v. Jenkins,* 420

---

4. Our holding will increase the responsibility vested in trial courts. It should encourage trial judges to exercise even greater care and caution in sustaining defense demurrers to the evidence.

U.S. 358, 370, 95 S.Ct. 1006, 1013, 43 L.Ed.2d 250, 259 (1975).[5]  See also: *United States v. Harvey,* 377 A.2d 411, 414 (D.C.App.1977); *State v. Shaw, supra* 282 Md. at 232, 383 A.2d at 1106; *People v. Brown, supra,* 40 N.Y.2d at 389–390, 386 N.Y.S.2d at 854, 353 N.E.2d at 818; *Commonwealth v. Bolden,* 472 Pa. 602, 630, 373 A.2d 90, 103 (1977) (plurality opinion); *State v. Musselman, supra* at 1066 & n.5.  In the instant case, even if it were feasible to resume the pending trial in the event of appellate reversal of the trial court's determination, further proceedings devoted to the resolution of substantive, factual issues would most certainly be necessary.

The trial court in the instant case granted a defense demurrer to charges of murder and voluntary manslaughter and also to counts of causing a catastrophe.  Its decision was based upon a determination that the evidence adduced by the Commonwealth was legally insufficient to enable a rational person to find the defendants guilty of those charges.  This was a decision factually related to guilt or innocence.  If it were reversed, further proceedings devoted to the resolution of factual issues would be necessary.  Such proceedings, however, are barred by principles of double jeopardy.  Under these circumstances, the Commonwealth has no right of appeal.

Appeal quashed.

JOHNSON, J., filed a dissenting opinion.

JOHNSON, Judge, dissenting:

Shall the Commonwealth hereafter be foreclosed from securing appellate review of pure questions of law where the defendant successfully seeks to avoid a full trial by challenging the sufficiency of the evidence by demurrer at the close of the Commonwealth's case-in-chief?  Does appel-

---

**5.** The decision in *United States v. Jenkins* was overruled on other grounds in *United States v. Scott, supra,* holding that the government has a right of appeal from pre-verdict orders entered pursuant to defense motions for dismissal of charges unrelated to "factual guilt or innocence."  See: *Lee v. United States,* 432 U.S. 23, 29–30 & n.7, 97 S.Ct. 2141, 2145 & n.7, 53 L.Ed.2d 80, 86–87 & n.7 (1977).

late review of such a midtrial determination invade any interest protected by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, thereby barring a Commonwealth appeal therefrom? Since I find the answer to both of these questions to be in the negative, I must respectfully dissent.

The majority opinion is clearly correct in observing that a judgment of acquittal may not be appealed and terminates the prosecution when a second trial would be necessitated by reversal. This assertion is entirely consistent with the principal objectives of the Double Jeopardy Clause, and I endorse it completely. In the instant appeal, however, we have neither a judgment of acquittal nor the clear necessity of a retrial assuming reversal.

The constitutional prohibition of double jeopardy has been held to consist of three separate guarantees: (1) protection against a second prosecution for the same offense after acquittal, (2) protection against a second prosecution after conviction, and (3) protection against multiple punishments for the same offense. *Commonwealth v. Maddox*, 307 Pa.Super. 524, 453 A.2d 1010 (1982). Two threshold conditions must be met in order to implicate the prohibition against multiple punishments: (1) the accused must have been placed in jeopardy and (2) there must be a threat of successive prosecutions. *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977). The constitutional protection afforded by the Double Jeopardy Clause against government appeals in criminal cases attaches only where there is a danger of subjecting the defendant to a second trial for the same offense. *United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975).

Both the majority and this writer turn to *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978) to ascertain the legal principles to be drawn from the federal cases reviewing the tension between the right of an appeal by the prosecutor and the prohibitions of the Double Jeopardy Clause. We reach different conclusions.

It is worth noting that the majority in *Scott* determined that " 'the lessons of experience' indicate that Government appeals from midtrial dismissals requested by the defendant would significantly advance the public interest in assuring that each defendant shall be subject to a just judgment on the merits of his case...." *Scott*, 437 U.S. at 101, 98 S.Ct. at 2199, 57 L.Ed.2d at 80–81. There, the trial court did not grant the motion for dismissal until after the close of all the evidence, disposing of two counts of a three-count indictment. On appeal, the Sixth Circuit, relying on *United States v. Jenkins*, 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975) dismissed the government's appeal in the belief that any further prosecution was barred by the Double Jeopardy Clause. The Supreme Court, in overruling *Jenkins*, held that a defendant, by deliberately choosing to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence, suffers no injury cognizable under the Double Jeopardy Clause if the government is permitted to appeal from such a trial court ruling. *Scott*, 437 U.S. at 98–99, 98 S.Ct. at 2198, 57 L.Ed.2d at 79.

This writer recognizes that *Scott* involved a motion to dismiss based upon preindictment delay which some might argue presents a clearer case of a basis unrelated to factual guilt or innocence than does the demurrer here involved. I submit, nevertheless, that the action of the trial judge on the instant appeal, in granting the demurrer, did *not* attempt to reach the factual issue of guilt or innocence—and the rule laid down in *Scott* is applicable here. I respectfully suggest that the majority misperceives the principle of law involved when it asserts, without citation to any authority, that the decision of the trial court in granting the demurrer was "factually related to guilt or innocence." (Maj. op., at 319, *cf. id.* at 318).

I need not take issue with the majority's extended explication of the rules to be applied when the Commonwealth might seek to appeal from orders granting motions for acquittal, under Pa.R.Crim.P. 1124(a)(2) and (a)(3), since that factual situation is not before us. Nor need I pause to

consider the applicability of double jeopardy principles to attempted appeals from orders granting a post-trial motion in arrest of judgment. The plain fact is that neither the United States Supreme Court nor our own supreme court has ever held that the government is barred from taking an appeal from an order granting a demurrer where retrial has not been shown to be necessary.

To the extent that the majority's holding in this case might be understood as implying that our own supreme court has not been reading the decisions of the Supreme Court, I must distance myself from that view. In *Commonwealth v. Wimberly*, 488 Pa. 169, 411 A.2d 1193 (1979), our supreme court reviewed, by direct appeal, the grant of a demurrer to all charges which had been entered at the conclusion of the Commonwealth's case. Viewing the trial court action upon the demurrer as being "a *de facto* judgment of acquittal", the court dismissed the appeal at 488 Pa. 173, 411 A.2d at 1195, on the rationale that it was "utterly beyond dispute that a judgment of acquittal is not appealable by the Commonwealth." 488 Pa. at 173, 411 A.2d at 1194.

Nevertheless, the *Wimberly* court recognized, by way of dictum, that "[i]t is well settled that an order granting a demurrer, *properly entered*, is purely a question of law and is appealable by the Commonwealth." *Id.* (emphasis in original) Justice O'Brien, speaking for our supreme court, cited to *United States v. Scott, supra*, quoting *United States v. Martin Linen Supply Co., supra*, for the proposition that an acquittal occurs only when the ruling of the judge actually represents a resolution in the defendant's favor, correct or not, of some or all of the *factual* elements of the offense charged.

While the majority acknowledges that this is the legal principle to guide us in resolving this appeal and, in fact, cites to *Scott, Martin Linen Supply* and *Wimberly* for this proposition, its analysis, in my view, obliterates the distinction which has long obtained between acquittals and demurrers "properly entered." After correctly observing that an

order sustaining a demurrer "is a mid-trial determination that the prosecution's evidence is *legally* insufficient to support a conviction" (Maj. op., at 317) (emphasis added), the majority makes a quantum leap, without citation to any authority, and concludes that "[f]or double jeopardy purposes it has precisely the same effect as a directed verdict of acquittal." *Id.*

The majority goes on to compare the instant appeal with cases where the trial court actually compared the relative credibility of witnesses and cases where the trial court had entered a finding of not guilty in addition to sustaining a demurrer to the evidence. The majority then states:

For double jeopardy purposes, there is no practical distinction to be drawn between the determinations made in these cases and a determination that the evidence, when considered in the light most favorable to the Commonwealth, is so lacking in sufficiency that no rational fact finder can rest a conviction thereon. In either situation, there has been a termination of the trial on a basis related to a factual determination of guilt or innocence. In either situation, a second trial is necessary in the event of reversal. (Maj. op., at 318).

I cannot agree. I do not understand why the majority finds no distinction between the alleged *legal sufficiency* which is before us on this appeal and the *factual* determinations in the cases upon which the comparison is made. Having read the trial court's opinion in this case, dated January 28, 1982, and having reviewed the trial transcript, I have found nothing which would lead me to conclude that the trial judge did anything more than consider the legal sufficiency of the Commonwealth's evidence. The majority does not assist me in my search for some justification for its conclusion inasmuch as the action of the trial judge in the instant appeal is, inexplicably, not discussed in the majority opinion.

Equally disturbing is the bare assertion by the majority that a reversal of the trial court would necessitate "a second trial" and/or "further proceedings." Clearly, there

is nothing in the record to support a conclusion by this court that a second trial would be necessary, were we to reverse. If this court is suggesting that mere passage of time necessarily dictates that the trial be begun all over again, assuming reversal and following remand, I feel that such an assertion should properly be accompanied by whatever reasoning there may be to support such an assertion. Apart from the fact that the record does not contain any evidence that a second trial would be mandatory, a midtrial appeal does not even raise that issue. I am loathe to assume that our trial courts are unable to resolve such an issue, if and when it might properly be presented to them.

In footnote 1, (Maj. op., at 311), the majority disapproves of the trial court's stay of the remaining charges, pending resolution of this appeal. However, absent authority against the utilization of such a procedure under the instant circumstances, I fail to understand how the majority can hold that retrial should be required on the charges where the demurrers were sustained, in light of the fact that the charges were not dismissed and where the remaining charges were stayed. It would seem that the majority is making a determination on a factual situation that is not before us, namely, where charges have been dismissed pursuant to a demurrer and trial terminated. As that factual situation is not before us, this court cannot then attempt to mold the facts by "disapproving" of a procedure in order to justify a ruling on a set of facts to which its ruling *would* apply.

The procedural posture of the instant case reveals that *no* danger of a second trial is present if the Commonwealth is permitted to appeal the instant orders. The trial court merely sustained appellees' demurrers to the charges. No dismissal of these charges nor discharge of appellees as to these counts occurred. In fact, the remaining charges concerning the Chances R fire were *stayed,* pending the resolution of this appeal.

It is not the purpose of this court to speculate on what will or might occur upon the return of this case to the trial

court, absent clear authority. We cannot and should not speculate as to what the trial judge or the parties may do in such a situation. The *extent* of the majority's holding, then, is improper, in my view, as reaching issues not cognizable on this appeal.

As a matter of policy, we should restrict our rulings to the factual and procedural posture of the case as presented to the court. The instant appeal does not entail the threat of retrial because the charges appealed from were *not* dismissed and the remaining charges *stayed*. Hence, in my view, the majority's attempt to apply double jeopardy principles to the instant facts is misplaced, as is any attempt to bootstrap such an application by implying that either the procedure in the instant case was inappropriate, or that future proceedings in this case implicate double jeopardy.

I take no position as to whether the instant appeals would be barred by double jeopardy if retrial were required. However, as retrial is *not* involved instantly, I cannot concede that the appeals must be quashed in light of the voluminous authority permitting Commonwealth appeals from midtrial orders sustaining demurrers, when the trial court's ruling properly applied the test long established for such a ruling. *See e.g. Commonwealth v. Wimberly, supra; Commonwealth v. Lewis,* 299 Pa.Super. 367, 445 A.2d 798 (1982); *Commonwealth v. Wydo,* 205 Pa.Super. 62, 208 A.2d 12 (1965).

My conclusion that the appeals are not barred by double jeopardy requires me to reach the merits of the appeal.

Upon review of the record and arguments from all parties, I find ample support for the trial court's conclusion that the evidence presented by the Commonwealth was legally insufficient to support a conviction on the charges of homicide, causing a catastrophe and voluntary manslaughter. I would therefore affirm the order of the trial court sustaining the demurrers to these charges, and remand with a procedendo.